UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| DAMON T. DORRIS, ) | Case No. 16-40251-659 |
| ) | Judge Kathy A. Surratt-States |
| ) | Chapter 13 |
| Debtor. ) | |
| ) | |
| DANIEL J. CASAMATTA, ) | **Adversary No. 16-4025-659** |
| ACTING U.S. TRUSTEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -v- ) | |
| ) | |
| CRITIQUE SERVICES, LLC, ET. AL., ) | |
| ) | |
| ) | |
| Defendants. ) | |

### ORDER DENYING MOTION TO APPROVE SETTLEMENT AGREEMENT BETWEEN PLAINTIFF AND DEFENDANTS CRITIQUE SERVICES, LLC AND BEVERLY HOLMES DILTZ

The matter before the Court is the Motion to Approve Settlement Agreement Between Plaintiff and Defendants Critique Services, LLC and Beverly Holmes Diltz (hereinafter "Motion to Approve Settlement"). A hearing was held on May 24, 2016, where the parties appeared by counsel. Based upon a consideration of the record as a whole the Court rule as follows:

Pursuant to Section 105(a) of the Bankruptcy Code, the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. The Bankruptcy Court has broad discretion in determining what remedies are appropriate for acts of contempt against its own order. *See* 11 U.S.C. §105(a) (2016). Here, Critique Services, LLC and Beverly Holmes Diltz (hereinafter collectively "Defendants") are undoubtably in contempt of the 2007 Settlement Agreement and Court Order approved by the Bankruptcy Court and entered in *U.S. Trustee v. Diltz*, et. al., Adversary No. 05-4254 on July 31, 2007 (hereinafter "2007 Order"). In an attempt to mitigate the violations of the 2007 Order, the parties have now proposed yet another

settlement agreement, Stipulated Agreed Order Resolving the United States Trustee's Complaint for Injunctive Relief and a Civil Penalty Pursuant to 11 U.S.C. §526; and for Sanctions for Violating the 2007 Consent Decree Regarding Critique Services, L.L.C. and Beverly Holmes Diltz (hereinafter "Proposed Settlement Agreement"), that was attached to the Motion to Approve Settlement, to resolve the matter. While the Court encourages parties to enter into negotiations and settlements to promote judicial efficiency, this particular agreement is one that the Court has a statutory interest in how parties are sanctioned for violation of its own order.

Upon review of the Proposed Settlement Agreement, the Court finds that its terms (1) fail to address Defendants systematic abuse of the bankruptcy process; (2) fail to provide a civil penalty against Defendants in an amount necessary to coerce continued compliance with the Proposed Settlement Agreement; and (3) fail to protect the general public from further harm. The Proposed Settlement Agreement disparages the harm caused to numerous individuals in the St. Louis metropolitan area and creates yet another loophole for Defendants to find their way back into Bankruptcy Court with the United States Trustee (hereinafter "UST") providing little to no oversight of their operation.

To begin, Defendants and the UST have a longstanding history of failed stipulations and settlement orders with this Court. The first Order granting injunctive was entered on March 11, 1999 in Adversary No. 99-4065, *Joel Pelofsky v. Beverly Holmes*, pursuant to a Stipulation. The second Order was Consent Permanent Injunction and Court Order entered on November 23, 2001 in Adversary No. 01-4333, *Joel Pelofsky, United States Trustee v. Beverly Holmes, d/b/a Critique Service*. The third Order was Permanent Injunction and Consent Decree entered on December 29, 2003 in Adversary No. 03-4003, *C.E. "Sketch" Rendlen, III, United States Trustee v. Beverly Holmes d/b/a Critique Services d/b/a Critique Legal Services and Critique Legal Services, L.L.C.* And finally the fourth Order, that is the subject of this Adversary, was Settlement Agreement and Court Order entered on July 31, 2007, in Adversary No. 05-4254, *Nancy Gargula, United States*

*Trustee v. Beverly Holmes Diltz, Individually and as a Member of Critique Services, L.L.C. dba Critique Services, Critique Services, L.L.C., a Missouri Limited Liability Company, d/b/a Critique Services and Renee Mayweather.*

In each of the prior settlement agreements, Defendants and the UST have consistently used the same or similar permanent injunction language which has simply failed to enjoin Defendants from continuing their misconduct. For over a decade, Defendants have habitually violated the Court's orders and used the vague terms in each settlement agreement to continue their operation. It is clear to the Court that Defendants are already trying to misconstrue the Proposed Settlement Agreement based on the exchange between Mr. Mass and Mr. Miller about whether or not Ms. Diltz can "sell the business" or provide services to another attorney outside of Missouri. Thus, the Court must now intervene to ensure that the terms of this Proposed Settlement Agreement are scrutinized and are satisfactory under the law and to the Court.

The Proposed Settlement Agreement imposes a civil penalty under 11 U.S.C. Section 526(c)(5)(B). "Generally, the appropriate sanction for an act of civil contempt is a calculated monetary penalty equal to that of the loss incurred and/or the amount necessary to coerce continued compliance with the order." *In re Burnett*, 455 B.R. 187, 195 (Bankr. E.D. Ark. 2011) (citing *United States v. United Mine Workers*, 330 U.S. 258, 304, 67 S.Ct. 677, 700, 91 L.Ed. 844 (1947)). Here, the Proposed Settlement Agreement proposes a $5,000.00 civil penalty which the Court views as merely a drop in the bucket compared to the hundreds of thousands of dollars Critique Services, LLC and Beverly Holmes Diltz have received from hardworking individuals in the St. Louis metropolitan community seeking bankruptcy relief. The civil penalty amount is clearly an arbitrary number negotiated between the parties without any rhyme or reason. It is neither calculated to equal the total loss incurred by the debtors nor does it coerce compliance with the 2007 Order. To put this amount in context, an attorney in this district receives $4,000.00 in attorneys fees under the Flat Fee Option over the life of *one* Chapter 13 plan. In the past nine

years, James Robinson, an attorney affiliated with Critique Services, LLC filed over 6,200 bankruptcy cases in this Court[1]:

| Year | Chapter 7 | Chapter 13 | Total Per Year |
|---|---|---|---|
| 2007 | 374 | 8 | 382 |
| 2008 | 365 | 4 | 369 |
| 2009 | 657 | 14 | 671 |
| 2010 | 846 | 29 | 875 |
| 2011 | 1098 | 17 | 1115 |
| 2012 | 1064 | 61 | 1125 |
| 2013 | 1014 | 141 | 1155 |
| 2014 | 496 | 49 | 545 |
| **Total** | **5,914** | **323** | **6,237** |

In addition, Dedra Brock-Moore and Dean Meriweather, attorneys affiliated with Critique Services, LLC in 2014 and 2015, filed over 800 Chapter 7 cases and over 125 Chapter 13 cases combined. Looking at the total amount of case filings since the 2007 Order, the Court finds that the proposed civil penalty of $5,000.00 fails to compensate for the magnitude of the violations of the 2007 Order and the burden of the harm to the general public.

Additionally, the UST filed in support of its Motion for Temporary Restraining Order the Affidavit of Lisa Larkin paralegal in the Office of Chief Disciplinary Counsel (hereinafter "OCDC") which referenced 20 debtors' stories and Affidavit of Miguel Rivero, investigator for the Missouri Attorney General's Office which reference three debtors' stories and his own experience when he went to the Critique office.

Furthermore, Bankruptcy Courts in other jurisdictions have imposed much greater civil penalties and sanctions for acts similar to that of the Defendants. In *In re Huffman*, 505 B.R. 726

---

[1] The numbers identified in this table were generated by the Case Management/Electronic Case Filing System for the United States Bankruptcy Court for the Eastern District of Missouri and are for demonstrative purposes only.

(Bankr. S.D. Miss. 2014), the Bankruptcy Court issued a civil penalty in the amount of $28,000.00, which was roughly four times the amount of fees which the Chapter 7 debtor had paid to a debt relief agency for debt settlement services it had promised, but never provided. The *Huffman* Court found that the civil penalty was appropriate for the Defendants clear and consistent pattern of misconduct. Therefore, *Huffman* reasoned that such a penalty was not so burdensome as to be punitive, but sufficient enough to deter against future non-compliance.

In comparison, Defendants in the instant case, have also demonstrated a clear and consistent pattern of taking money from debtors and either failing to file their bankruptcy cases or failing to provide debtors with competent legal counsel in filing their bankruptcy cases; however, in contrast to *Huffman*, the volume of cases filed by attorneys affiliated with the Defendants is in the thousands and the penalty is far less. The Court in this instance, is not certain what exact amount will coerce Defendants to comply with any new order. However, it has been proven time after time, that Defendants have no deference to the Court or the forthwith consequences of violating judicial orders. The history of Defendants pattern of defiance speaks for itself. Hence, the Court finds that the proposed $5,000.00 is not a sufficient civil penalty, and Defendants and the UST should agree to an amount that coerces compliance by Defendants.

"Furthermore, when a sanction is designed to coerce compliance, the sanction should be payable to the court, not the opposing party." *In re Burnett*, 455 B.R. 187, 195-96 (Bankr. E.D. Ark. 2011) (citing *Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1423, 99 L.Ed 721 (1988)). In the instant case, the Proposed Settlement Agreement call for the civil penalty be paid to the UST; however, the Court instructs that the civil penalty payment should be to the Clerk of the United States Bankruptcy Court for the Eastern District of Missouri.

The Proposed Settlement Agreement fails to protect the public from further harm. Paragraph three (3) of the Proposed Settlement Agreement establishes a deadline for Defendants to provide Plaintiff and the Court with certain records necessary to determine the amount of restitution within

forty-five (45) days. At the hearing, Mr. Mass, counsel for Defendants, explained that Defendants computers were "hacked", and that Defendants are facing technology challenges that have prevented them from producing the lists of clients and debtors. The Court is concerned that Defendants have had a security breach that may have exposed thousands of clients' information to the public and an even greater harm than what Defendants have already caused through the Critique Services operation. Thus, the Court instructs Defendants to produce the list within 30 days instead of 45 days. Further, it is fair to say that this settlement term would be difficult for the Court and the UST to monitor and enforce against Defendants. Hence, the Court now directs Defendants and the UST to include in its settlement terms that would ensure that Defendants seek technology support to retrieve the information from their computer hard-drive.

Paragraph four (4) of the Proposed Settlement Agreement proposes that Defendants will make the files of all active clients as of May 1, 2016 available to the clients and will notify the clients that the files are available within fourteen days as set forth in the order. At the hearing, the parties' counsel described the term "active clients", but the Court now instructs the parties to include the definition of "active clients" in the Proposed Settlement Agreement. Further, the Court instructs Defendants to prepare the notice that will be sent to clients and attach the notice to an Amended Settlement Agreement for the Court to review. The Court finds that the Proposed Settlement Agreement as written, fails to take into account the clients who are the true victims of Defendants' operation. Many individuals will have to request time off from work, seek alternative care for their children and elderly parents, and find transportation to retrieve their files as provided in the Proposed Settlement Agreement. The notice to clients should include the following: dates, times and location of where their files will be available; and include at least three Saturday dates for clients who are unavailable to retrieve their files during the week. The Court instructs Defendants to identify a designated email address and telephone number, where clients can inquire about their files.

Lastly, the Proposed Settlement Agreement fails to address the fact that the general public is still confused as to who or what Critique Services, LLC is. There are debtors who have appeared before this Court who believe that they are represented by Critique Services, LLC. The general public does not have a concept of differentiating Critique Services, LLC from the affiliated attorneys who provide legal representation in Bankruptcy Court. Thus, the Court instructs that the Settlement Agreement includes provisions to dissolve Critique Services, LLC and its d/b/a Critique Services, LLC or any other fictitious names referencing Critique Services LLC, or Critique Legal Services, LLC. The Court finds that the continued use of the name Critique Services is devastating to the community and will continue to cause harm to those who have historically identified Critique Services with low cost bankruptcy legal services in the Eastern District of Missouri. Therefore,

**IT IS ORDERED THAT** the Motion to Approve Settlement Between Plaintiff and Defendants Critique Services, LLC and Beverly Holmes Diltz is **DENIED** and the matter is continued to **June 7, 2016 at 10:00 am** for consideration of an amended settlement agreement as described above.

                                                            /s/ Kathy A. Surratt-States
                                                            KATHY A. SURRATT-STATES
                                                           Chief United States Bankruptcy Judge

DATED: May 25, 2016
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO 63102

Daniel J. Casamatta
Office of U.S. Trustee
111 S. 10th Street
Suite 6353
St. Louis, MO 63102

Adam Eric Miller
Office of the United States Trustee
400 E. 9th St., Ste. 3440
Kansas City, MO 64106

Laurence D. Mass
230 S Bemiston Ave
Suite 1200
Clayton, MO 63105

Critique Services, LLC
3919 Washington Street
St. Louis, MO 63108

Renee Mayweather
3919 Washington Blvd.
St. Louis, MO 63108

Ross H. Briggs
4144 Lindell Blvd, suite 202
St. Louis, MO 63108

Rehva Renee Ericks
4307 Inlet Isle Dr.
Florissant, MO 63034

Stuart Jay Radloff
13321 N. Outer 40 Rd, Suite 800
St. Louis, MO 63017

Beverly Holmes Diltz
Critique Services
3919 Washington Blvd.
St. Louis, MO 63108

Terry and Averil Williams
7150 Vernon Ave.
St. Louis, MO 63130

Mary E. Lopinot
P.O. Box 16025
St. Louis, MO 63105

Asa Mulania Pierce
1537 Oakforest Pkwy Court
Apt F
St Louis, MO 63146

Teneya D Freeman
3936 Dellago
Florissant, MO 63034